STATE OF NORTH CAROLINA v. TONY WILLIAMS

No. 20A93

(Filed 28 January 1994)

**Robbery § 117 (NCI4th)— armed robbery—appearance of firearm —instructions**

The trial court did not err in a prosecution for armed robbery and attempted armed robbery by instructing the jury that it was to apply the mandatory presumption that the implement employed by defendant was a firearm where one convenience store clerk testified that defendant had used an object which was wrapped but which looked like a pistol and which she believed to be a pistol; another clerk at another store testified that she had believed that defendant had a gun because he had his hand in his pocket and kept saying that he was going to shoot her; and defendant testified that he did not own a gun and did not "mess with guns." Evidence that a defendant does not own a gun does not amount to substantial evidence contrary to State's evidence to the effect that he employed a gun during a robbery, and evidence tending to show that a defendant does not "mess with guns" is ambiguous at best and also does not amount to evidence contrary to State's evidence tending to show that the defendant used a firearm at the time he committed a robbery.

**Am Jur 2d, Robbery §§ 91 et seq.**

Justice FRYE dissenting.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.

Appeal of right pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 108 N.C. App. 295, 423 S.E.2d 333 (1992), finding no error in a judgment entered in the Superior Court, Sampson County, by Stevens, J., on 14 February 1991. Heard in the Supreme Court on 17 September 1993.

*Michael F. Easley, Attorney General, by Donald W. Laton, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was charged in indictments proper in form with two separate counts of robbery with a dangerous weapon in violation of N.C.G.S. § 14-87. The State's evidence at trial tended to show that on 20 November 1990, Janet Jordan was working as cashier at The Scotchman, a convenience store located in Sampson County. At approximately 7:20 p.m., the defendant entered the store and approached the counter. While looking directly at Jordan, the defendant pulled something from his pocket and said, "Give me your money." Jordan opened the cash register and the defendant reached into it and took a total of $60. Jordan testified that the object the defendant pulled from his pocket "looked like a pistol, but he had it wrapped up where I couldn't see what it was. It looked like the way he was holding it[,] it looked like a pistol that he had wrapped in something, and it stuck out." Jordan believed the object to be a real gun.

Approximately three hours later, at about 10:20 p.m., the defendant entered the Petro Mart in Sampson County. The cashier, Cathy Tew Smith, was cleaning the store at the time. The defendant approached the counter and asked for a pack of cigarettes. Smith testified that as soon as she hit the cigarette key on the cash register, the defendant demanded that she "open the drawer, b----, open the drawer b---- right now or I'll shoot you." The defendant had his right hand in his jacket pocket at that time and was pointing it toward Smith. Smith "thought he had a gun because he was pointing at me and he kept saying that he was going to shoot me." Smith became flustered and could not open the cash register. The defendant pulled the register on the floor. When it still would not open, the defendant fled without completing the

robbery. The transaction between Smith and the defendant at the Petro Mart was recorded by a security video-camera in the store.

The defendant gave testimony in the nature of alibi. He testified that at the time of the robberies in question, he was with friends and family celebrating his younger brother's birthday. The defendant further testified that he did not own a gun and did not "mess with guns."

The jury found the defendant guilty of one count of robbery with a dangerous weapon and one count of attempted robbery with a dangerous weapon. The trial court consolidated the cases for judgment and entered judgment sentencing the defendant to imprisonment for forty years.

The defendant appealed to the Court of Appeals, where a divided panel found no error in the judgment of the trial court. Judge Wynn dissented, contending that the majority had erred in its conclusion that no substantial evidence had been introduced tending to show that the defendant had not used a dangerous weapon. Therefore, Judge Wynn was of the opinion that the trial court had erred by instructing the jury as to the mandatory presumption arising where a defendant uses an implement that appears to be a deadly weapon and there is no evidence to the contrary. The defendant appealed to this Court as a matter of right by virtue of the dissent in the Court of Appeals.

The defendant contends that the trial court erred in its instructions to the jury by giving the State the benefit of a mandatory presumption that the object the defendant wielded during the robbery of The Scotchman and the later attempted robbery of the Petro Mart was a firearm. The defendant argues that the State was entitled only to an instruction giving it the benefit of a permissible inference that the object was a firearm. To establish robbery or attempted robbery with a dangerous weapon in this case, the State was required to prove beyond a reasonable doubt that the defendant possessed a firearm or other dangerous weapon at the time of the robbery or attempted robbery and that the victim's life was in danger or threatened. N.C.G.S. § 14-87 (1986). Here, substantial evidence tended to show that the defendant used what appeared to his victims to be a firearm during both the armed robbery and the attempted armed robbery in question.

This Court has explained that:

**STATE v. WILLIAMS**

[335 N.C. 518 (1994)]

[w]hen a person commits a robbery by the use or threatened use of an implement which appears to be a firearm or other dangerous weapon, *the law presumes*, in the absence of any evidence to the contrary, that the instrument is what his conduct represents it to be — an implement endangering or threatening the life of the person being robbed. *State v. Thompson*, 297 N.C. 285, 289, 254 S.E.2d 526, 528 (1979). Thus, where there is evidence that a defendant has committed a robbery with what appears to the victim to be a firearm or other dangerous weapon *and nothing to the contrary appears in evidence*, the presumption that the victim's life was endangered or threatened is mandatory. *See State v. Thompson*, 297 N.C. 285, 254 S.E.2d 526 (1979). If the jury in such cases finds the basic fact (that the robbery was accomplished with what appeared to the victim to be a firearm or other dangerous weapon), the jury must find the elemental fact (that a life was endangered or threatened). This is so because, when *no evidence* is introduced tending to show that a life was not endangered or threatened, "no issue is raised as to the nonexistence of the elemental facts and the jury may be directed to find the elemental facts if it finds the basic facts to exist beyond a reasonable doubt." *State v. White*, 300 N.C. 494, 507, 268 S.E.2d 481, 489, *rehearing den.*, 301 N.C. 107, 273 S.E.2d 443 (1980).

. . . .

The mandatory presumption under consideration here, however, is of the type which merely requires the defendant "to come forward with *some evidence* (or take advantage of evidence already offered by the prosecution) to rebut the connection between the basic and elemental facts. . . ." *State v. White*, 300 N.C. at 507, 268 S.E.2d at 489. Therefore, when *any evidence* is introduced tending to show that the life of the victim was not endangered or threatened, "the mandatory presumption disappears leaving only a mere permissive inference. . . ." *Id.* The permissive inference which survives permits but does not require the jury to infer the elemental fact (danger or threat to life) from the basic fact proven (robbery with what appeared to the victim to be a firearm or other dangerous weapon). *See generally State v. White*, 300 N.C. 494, 268 S.E.2d 481 (1980). *See State v. Alston*, 305 N.C. 647, 290 S.E.2d 614 (1982).

STATE v. WILLIAMS

[335 N.C. 518 (1994)]

*State v. Joyner*, 312 N.C. 779, 782-83, 324 S.E.2d 841, 844 (1985).

Bearing the foregoing principles in mind, we turn to examine the contention of the defendant in the present case. Here, the trial court instructed the jury that to find the defendant guilty of attempted robbery of the Petro Mart with a dangerous weapon, the jury must find that the defendant

> used or threatened to use a dangerous weapon or purported dangerous weapon in such a way as to endanger or threaten the life of that person, or by conduct which reasonably caused her to believe that her life was being endangered or threatened at the time . . . . Now, listen well, when a person attempts or perpetrates a robbery in such a way that it purportedly and reasonably appears to the victim that a firearm or other dangerous weapon is being used by such person, *in the absence of any evidence to the contrary*, the law of this State presumes the instrument to be what his conduct represented it to be, that is, a firearm or other dangerous weapon.

(Emphasis added). The relevant portion of the trial court's instructions on robbery of The Scotchman with a dangerous weapon were essentially identical to the above-quoted instructions on attempted robbery. These instructions by the trial court directed the jury that, as to each crime charged, it was to apply the "mandatory presumption" discussed in *Joyner* to the effect that the implement employed by the defendant was what it appeared to be — a firearm.

The defendant does not contest the fact that evidence at trial tended to show that he had committed the robbery and attempted robbery in such a way that it reasonably appeared to the victims that he was using a firearm. Instead, the defendant contends that there was substantial evidence introduced at trial tending to show that the implement he employed was not a firearm and, therefore, that the lives of the victims were not endangered or threatened. The defendant argues that, accordingly, "the mandatory presumption disappears, leaving only a mere permissive inference." This being the case, the defendant contends that the jury should have been instructed that, as to each crime charged, the evidence before it would permit but not require it to infer that the victim's life had been endangered or threatened. Judge Wynn agreed and based his dissent in the Court of Appeals solely on this point.

STATE v. WILLIAMS

[335 N.C. 518 (1994)]

The dispositive issue before us then is whether any substantial evidence was introduced at trial tending to show affirmatively that the instrument used by the defendant was not a firearm or deadly weapon and, as a result, that the lives of the victims were not endangered or threatened. The defendant focuses on two statements in his testimony to support his argument that there was substantial evidence tending to show that he did not possess a firearm at the time of the robbery and the attempted robbery in question. In presenting his alibi testimony, the defendant testified at one point that he did not "mess with guns" and at another point that he did not "own a gun." We conclude that evidence that a defendant does not own a gun does not amount to substantial evidence "contrary to" State's evidence to the effect that he employed a gun during a robbery. We further conclude that evidence tending to show that a defendant does not "mess with guns" is ambiguous at best and also does not amount to evidence contrary to State's evidence tending to show that the defendant used a firearm at the time he committed a robbery. Evidence in the present case would have supported a presumption by the jury that the defendant employed a firearm during both the robbery and the attempted robbery. Evidence that the defendant did not own a gun or generally did not "mess with guns" simply did not amount to substantial evidence to the contrary tending to show that he did not employ a firearm on the two specific occasions in question. Therefore, the trial court did not err by instructing only with regard to the mandatory presumption that the victims' lives were endangered or threatened and declining to instruct, instead, on a mere permissive inference. *See generally Joyner*, 312 N.C. at 782-83, 324 S.E.2d at 844.

In his brief before this Court, the defendant also addressed a constitutional issue. During oral arguments, however, the defendant conceded that the constitutional issue in question did not form a basis of the dissent in the Court of Appeals which gave rise to his right of appeal to this Court. Therefore, the constitutional question is not properly before us for consideration, and we neither reach nor decide that question. *State v. Riley*, 313 N.C. 499, 329 S.E.2d 381 (1985) (per curiam).

For the foregoing reasons, the decision of the Court of Appeals concluding that there was no error in the defendant's trial is affirmed.

Affirmed.

STATE v. WILLIAMS

[335 N.C. 518 (1994)]

Justice FRYE dissenting.

Three questions were contested at trial: 1) who committed the robbery at The Scotchman, 2) who committed the attempted robbery at the Petro Mart, and 3) whether the offenses were committed with a firearm or other dangerous weapon so as to constitute armed robbery as opposed to common law robbery. The State's evidence tended to show that defendant was the person who committed both offenses and that both were committed with a firearm or other dangerous weapon. Defendant's evidence tended to show that he was not the person who committed the offenses and that he neither owned nor "messed with" firearms.

The trial judge correctly instructed the jury that the burden of proof was upon the State to satisfy the jury as to defendant's guilt beyond a reasonable doubt of the offenses charged. On the first two questions, the jury rejected defendant's alibi defense and concluded that defendant was in fact the person who committed the offenses. The trial judge, however, decided the third question as a matter of law, instructing the jury as to the mandatory presumption arising where a defendant uses an implement that appears to be a firearm or other dangerous weapon and there is no evidence to the contrary, rather than leaving the question of whether the offenses were committed with a firearm or other dangerous weapon to the jury. *See State v. Allen,* 317 N.C. 119, 343 S.E.2d 893 (1986), and *State v. Joyner,* 312 N.C. 779, 324 S.E.2d 841 (1985).

As Chief Justice Exum wrote for a unanimous court in *Allen*:

Neither *Thompson, Alston* nor *Joyner* stands for the proposition that the state in armed robbery cases is relieved from the burden of proving beyond a reasonable doubt that the instrument used is in fact a firearm or dangerous weapon which in fact does endanger or threaten the life of the victim. All of these cases deal with whether the evidence was sufficient to permit the jury to make these essential findings. *Joyner,* however, does permit the state to rely on a mandatory presumption that an instrument which appears to the victim to be a firearm or other dangerous weapon capable of threatening or endangering the victim's life is in law such a weapon *when and only when there is no evidence in the case to the contrary.*

*Allen,* 317 N.C. at 125, 343 S.E.2d at 897 (emphasis added).

**STATE v. WILLIAMS**

[335 N.C. 518 (1994)]

There was some evidence to the contrary in the instant case, and the jury should have been permitted to consider it in determining whether the offenses committed were armed robbery and attempted armed robbery as opposed to common law robbery and attempted common law robbery. Here, as in *Allen*, "the jury should have been instructed that they could, but were not required to, infer from the instrument's appearance to the victim that it was a firearm or other dangerous weapon." *Id.* at 126, 343 S.E.2d at 897. As in *Allen*, the instructions here "effectively gave the state the benefit of a mandatory presumption when it was entitled only to the benefit of a permissive inference." *Id.*

I agree with the State that the evidence in this case was clearly sufficient to permit the jury to find defendant guilty of armed robbery and attempted armed robbery.

> However, in the subject case, the defendant in presenting an alibi defense, took the stand to testify in his own behalf that he did not "mess with guns." Moreover, on cross-examination, when the prosecutor asked the defendant, "Mr. Williams, did you testify you don't have a gun, you don't mess with guns?," the defendant replied, "Correct. I don't own a gun." This evidence, when coupled with the evidence that neither of the victims ever saw a gun, is evidence that the defendant did not have a gun. It was therefore error to give the mandatory presumption instruction in this case.

*State v. Williams*, 108 N.C. App. 295, 301, 423 S.E.2d 333, 337 (1992) (Wynn, J., dissenting). The evidence that defendant did not own a gun, standing alone, would not suffice, for defendant could have committed the offense with a borrowed or stolen gun. The additional evidence that he did not "mess with guns," however, was evidence from which the jury could reasonably infer that he did not use or have a gun on this occasion. Thus, I agree with Judge Wynn's dissenting opinion. The case was for the jury, not the judge.

For the reasons stated herein, I must respectfully dissent.

Chief Justice EXUM and Justice WHICHARD join in this dissenting opinion.