ELMORE, Judge.
 

 *85
 
 A jury found Joshua Wayne Martin (defendant) guilty of robbery with a dangerous weapon. On appeal by writ of
 
 certiorari,
 
 defendant argues that the trial court committed reversible error and abused its discretion by overruling his objections during the State's closing arguments. We hold that defendant received a trial free from prejudicial error.
 

 I. Background
 

 The State's evidence at trial tended to show the following: On 22 April 2014, defendant entered the Adams Market convenience store with a shotgun and demanded money from the manager, Wanda Robinson. Ms. Robinson complied, turning over approximately $250.00 from the cash register. Defendant then fled from the convenience store, leaving Ms. Robinson unharmed. Police identified defendant as the robbery suspect and arrested him three days later.
 

 During interrogation, defendant told police that the shotgun used in the robbery was under a truck bed cover behind his father's house. Police found the shotgun in that same location. It was unloaded. Defendant's father testified that the shotgun was his, though he did not have ammunition for it and had not fired it since he was thirteen or fourteen years old. He also testified that he did not know when defendant took the shotgun.
 

 At trial, defendant admitted that he "robbed the store." When asked how he used the shotgun, defendant testified, "I pointed it towards Ms. Wanda and asked for the money and then I pointed it away from her and grabbed the money." According to defendant, however, the shotgun was unloaded during the robbery. During closing arguments, both attorneys argued whether the shotgun defendant used during the robbery could be considered a dangerous weapon. Defendant's counsel stated on several occasions that "the law recognizes that an unloaded gun is not a dangerous weapon." She also acknowledged that an unloaded gun could be a dangerous weapon if it was used to strike someone, "but there is no evidence of that" in this case. Over defendant's objections, the prosecution argued to the jury that the shotgun could be a dangerous weapon even if it was unloaded:
 

 It is easy to say there is no ammunition in the shotgun. It is easy to remove ammunition from the shotgun in the three-day period from the robbery until the gun was found, but again at the end of the day, as we'll go through in a few moments with the elements of a crime[,]
 
 it doesn't matter whether there is ammunition in the shotgun or not.
 

 *86
 
 MS. TOOMES: Objection.
 

 *428
 
 THE COURT: Overruled.
 

 ....
 

 The sixth and seventh elements, ladies and gentlemen of the jury[,] are the key to the case. This is what makes this case an Armed Robbery case as opposed to a Common Law Robbery case. The sixth element is that at the time the defendant obtained the property, at the time they [sic] took the money, this defendant was in possession of a dangerous weapon. You are going to be told that a dangerous weapon is one, once again[,] that is likely to cause death or serious bodily injury. You are also going to be told and that parenthetical is important is very important as well "... or, that it reasonably appeared to the victim that a dangerous weapon was being used in which case you may infer the [ ] said instrument was what the defendant's conduct represented it to be."
 

 Once again we know that this shotgun is a dangerous weapon for two reasons: No. 1) because someone can fire the shotgun and shoot someone else with a projectile or projectiles that would come from the shotgun, and No. 2) even if a shotgun is not loaded with any ammunition, it is a dangerous weapon in and of itself. You have heard testimony, the barrel of a shotgun is made of steel. It is a hard surface. This is not foam. This is not [s]alt. This is not plastic. This is not a toy. This [is] real. What the defendant used is real. One can imagine, if a person takes this shotgun and strikes or assaults someone, especially doing so repeatedly, that will likely cause or will cause serious bodily injury or death. Our common sense and reason tell us that.
 
 That is why if the defendant had brought in a plastic or toy gun and pointed that at the victim, this would not be an armed robbery case, or when you bring a real gun and point a shotgun at someone it is armed robbery.
 

 MS. TOOMES: I'm going to object, Your Honor.
 

 THE COURT: Overruled.
 

 (Emphasis added.)
 

 *87
 
 Immediately after closing arguments, the trial court instructed the jury that "[b]oth attorneys in their closing arguments have stated what they believe the law is in this case. I will instruct you that if their statements in closing arguments differ from what I am getting ready to tell you the law is then you are to follow the instructions of the law as I given it [sic] to you." The court then instructed the jury on the elements of robbery with a dangerous weapon and common law robbery. As to the dangerous weapon element, the court explained that
 

 an object incapable of endangering or threatening lives cannot be considered a dangerous weapon. In determining whether evidence of a particular instrument constitutes evidence of a dangerous weapon, the determinative question is whether there is evidence that a person's life was in fact endangered or threatened. Now members of the jury, a robbery victim, that is one who is a victim of a robbery, more particularly, an armed robbery, should not have to force the issue of whether the instrument being used actually is also loaded and can shoot a bullet.
 

 In an Armed Robbery case the jury may conclude that the weapon is what it appeared to the victim to be, a loaded gun; if, however, there is any evidence that the weapon was in fact not what it appeared to be, that is a loaded gun, to the victim, the jury must determine what, in fact, the instrument was. It is for the jury to determine the nature of the weapon, and [ ] how it was used [,] and [ ] you could, but you're not required to infer from the appearance of the instrument[ ] to the victim or alleged victim that it was a dangerous weapon.
 

 On 14 January 2015, the jury found defendant guilty of robbery with a dangerous weapon, and the trial court sentenced defendant to an active term of sixty-seven to ninety-three months of imprisonment. Defendant filed a written notice of appeal on 20 January 2015, though the notice failed to "designate the judgment or order from which appeal is taken," as required by Rule 4. N.C. R.App. P. 4(b) (2016). Despite the timely filing and service on the State, appellate entries were not made until 6 April 2015. Nevertheless, we allow defendant's petition for writ of
 
 certiorari
 

 *429
 
 pursuant to Rule 21(a)(1) to review the merits of the appeal. N.C. R.App. P. 21(a)(1) (2016) ("The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action....");
 
 *88
 

 see
 

 State v. Gordon,
 

 228 N.C.App. 335
 
 , 337,
 
 745 S.E.2d 361
 
 , 363 (2013) (" 'Appropriate circumstances' may include when a defendant's right to appeal has been lost because of a failure of his or her trial counsel to give proper notice of appeal." (citing
 
 State v. Hammonds,
 

 218 N.C.App. 158
 
 , 163,
 
 720 S.E.2d 820
 
 , 823 (2012) )).
 

 II. Discussion
 

 Defendant argues that the trial court erred in overruling his objections to the statements made by the prosecutor during its closing argument regarding whether the shotgun was a dangerous weapon.
 

 "It is well settled that the arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases."
 
 State v. Williams,
 

 317 N.C. 474
 
 , 481,
 
 346 S.E.2d 405
 
 , 410 (1986) (citations omitted). Pursuant to N.C. Gen.Stat. § 15A-1230, counsel
 

 may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.
 

 N.C. Gen.Stat. § 15A-1230(a) (2015). "Counsel are entitled to argue to the jury all the law and facts in evidence and all reasonable inferences that may be drawn therefrom, but may not place before the jury incompetent and prejudicial matters and may not travel outside the record by interjecting facts of their own knowledge or other facts not included in the evidence."
 
 State v. Syriani,
 

 333 N.C. 350
 
 , 398,
 
 428 S.E.2d 118
 
 , 144 (1993) (citing
 
 State v. McNeil,
 

 324 N.C. 33
 
 , 48,
 
 375 S.E.2d 909
 
 , 918 (1989),
 
 sentence vacated,
 

 494 U.S. 1050
 
 ,
 
 110 S.Ct. 1516
 
 ,
 
 108 L.Ed.2d 756
 
 ,
 
 on remand,
 

 327 N.C. 388
 
 ,
 
 395 S.E.2d 106
 
 (1990),
 
 cert. denied,
 

 499 U.S. 942
 
 ,
 
 111 S.Ct. 1403
 
 ,
 
 113 L.Ed.2d 459
 
 (1991) ). "Incorrect statements of law in closing arguments are improper...."
 
 State v. Ratliff,
 

 341 N.C. 610
 
 , 616-17,
 
 461 S.E.2d 325
 
 , 328-29 (1995) (holding that the trial court erred in failing "to sustain defendant's objection and instruct the jury to disregard" the prosecutor's improper statement of the law).
 

 "The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection."
 

 *89
 

 State v. Jones,
 

 355 N.C. 117
 
 , 131,
 
 558 S.E.2d 97
 
 , 106 (2002) (citations and quotation marks omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hennis,
 

 323 N.C. 279
 
 , 285,
 
 372 S.E.2d 523
 
 , 527 (1988). "[S]tatements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred."
 
 State v. Green,
 

 336 N.C. 142
 
 , 188,
 
 443 S.E.2d 14
 
 , 41 (1994).
 

 In North Carolina, armed robbery is defined in N.C. Gen.Stat. § 14-87 as follows:
 

 (a) Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.
 

 *430
 
 N.C. Gen.Stat. § 14-87(a) (2015). "The essential difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a firearm or other dangerous weapon whereby the life of a person is endangered or threatened."
 
 State v. Lee,
 

 282 N.C. 566
 
 , 569,
 
 193 S.E.2d 705
 
 , 707 (1973).
 

 In
 
 State v. Allen,
 

 317 N.C. 119
 
 ,
 
 343 S.E.2d 893
 
 (1986), our Supreme Court summarized the evidentiary rules in armed robbery cases where the "dangerous weapon" element is at issue:
 

 (1) When a robbery is committed with what appeared to the victim to be a firearm or other dangerous weapon capable of endangering or threatening the life of the victim and there is no evidence to the contrary, there is a mandatory presumption that the weapon was as it appeared to the victim to be. (2) If there is some evidence that the implement used was not a firearm or other dangerous weapon which could have threatened or endangered the life of the victim, the mandatory presumption disappears leaving only a permissive inference, which permits but
 
 *90
 
 does not require the jury to infer that the instrument used was in fact a firearm or other dangerous weapon whereby the victim's life was endangered or threatened. (3) If all the evidence shows the instrument could not have been a firearm or other dangerous weapon capable of threatening or endangering the life of the victim, the armed robbery charge should not be submitted to the jury.
 

 Id.
 
 at 124-25,
 
 343 S.E.2d at 897
 
 .
 

 Here, defendant argues that the prosecutor made an incorrect statement of the law when he told the jury that "it doesn't matter whether there is ammunition in the shotgun or not." According to defendant, the prosecutor's statements turned the "permissive inference," whereby the jury was permitted but not required to infer that the shotgun was a dangerous weapon, into a "mandatory presumption that the weapon was as it appeared to the victim to be." Defendant also contends that it was improper for the prosecutor to tell the jury that "when you bring a real gun and point a shotgun at someone it is armed robbery," as that statement, in context, suggests the shotgun was a dangerous weapon "in and of itself" because it could be used to "strike or assault" someone. We agree.
 

 Whether the shotgun was loaded at the time of the robbery was relevant because "[a]n object incapable of endangering or threatening life cannot be considered a dangerous weapon."
 
 State v. Frazier,
 

 150 N.C.App. 416
 
 , 419,
 
 562 S.E.2d 910
 
 , 913 (2002) (citing
 
 Allen,
 

 317 N.C. at 122
 
 ,
 
 343 S.E.2d at
 
 895 ). In
 
 Frazier,
 
 we explained that "where a defendant presents evidence that the weapon used during a robbery was unloaded or otherwise incapable of firing, such evidence 'tend[s] to prove the absence of an element of the offense [of armed robbery].' "
 

 Id.
 

 (quoting
 
 State v. Joyner,
 

 67 N.C.App. 134
 
 , 136,
 
 312 S.E.2d 681
 
 , 682 (1984),
 
 aff'd,
 

 312 N.C. 779
 
 ,
 
 324 S.E.2d 841
 
 (1985) ). If the jury believed defendant's evidence tending to show that the shotgun was unloaded, it should have found defendant not guilty of armed robbery.
 

 In addition, while prior decisions have held that a firearm incapable of firing may be a dangerous weapon where it was used to strike or bludgeon the victim,
 
 e.g.,
 

 State v. Funderburk,
 

 60 N.C.App. 777
 
 , 778-79,
 
 299 S.E.2d 822
 
 , 823 (1983), there was no evidence in this case that defendant used the shotgun to strike Ms. Robinson. By suggesting that the shotgun could have been used to strike her, the prosecutor ignored "the circumstances of use" from which we "determine whether an instrument is capable of threatening or endangering life."
 

 *91
 

 State v. Westall,
 

 116 N.C.App. 534
 
 , 539,
 
 449 S.E.2d 24
 
 , 27 (1994) (citing
 
 State v. Pettiford,
 

 60 N.C.App. 92
 
 ,
 
 298 S.E.2d 389
 
 (1982) );
 
 see
 

 State v. Alston,
 

 305 N.C. 647
 
 , 650,
 
 290 S.E.2d 614
 
 , 616 (1982) ("[T]he determinative question is whether the evidence was sufficient to support a jury finding that a person's
 
 life
 
 was in fact endangered or threatened." (citing
 
 State v. Moore,
 

 279 N.C. 455
 
 ,
 
 183 S.E.2d 546
 
 (1971) )).
 

 Although we agree that the prosecutor's statements were improper, defendant has failed to show prejudice.
 

 *431
 
 N.C. Gen.Stat. § 15A-1442(6), -1443(a) (2015). "[A]s a general rule, a trial court cures any prejudice resulting from a prosecutor's misstatements of law by giving a proper instruction to the jury."
 
 State v. Goss,
 

 361 N.C. 610
 
 , 626,
 
 651 S.E.2d 867
 
 , 877 (2007) (citing
 
 State v. Trull,
 

 349 N.C. 428
 
 , 452,
 
 509 S.E.2d 178
 
 , 194 (1998),
 
 cert. denied,
 

 528 U.S. 835
 
 ,
 
 120 S.Ct. 95
 
 ,
 
 145 L.Ed.2d 80
 
 (1999) ). After closing arguments, the trial court admonished the jury to follow its own instructions and not the attorneys' statements of the law. The court then properly instructed the jury on the elements of armed robbery, including the permissive inference regarding the "dangerous weapon" element, and the lesser-included offense of common law robbery. Based on the steps taken by the trial court, defendant has failed to show prejudice which would warrant a new trial.
 

 III. Conclusion
 

 We conclude that defendant received a trial free from prejudicial error. The trial court took appropriate steps to correct the prosecutor's misstatements of the law and otherwise properly instructed the jury on the law and the offenses at issue.
 

 NO PREJUDICIAL ERROR.
 

 Judges HUNTER, JR. and DAVIS concur.